**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

AHMET TERCUMAN, *on behalf of himself,*
*FLSA Collective Plaintiffs and the Class*,

                        Plaintiff,

        v.

GAMMA REALTY LLC,
CASOL REALTY LLC,
NEW YORK HEIGHTS LLC,
GAMMA BEDFORD LLC,
URI POSNER, and
DILEK ALBARDAK,

                        Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, AHMET TERCUMAN ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, GAMMA REALTY LLC, CASOL REALTY LLC, NEW YORK HEIGHTS LLC, GAMMA BEDFORD LLC ("Corporate Defendants"), URI POSNER and DILEK ALBARDAK (the "Individual Defendants," and together with Corporate Defendants, "Defendants") and states as follows:

1

**INTRODUCTION**

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid overtime wages due to a fixed salary; (2) unpaid wages, including overtime, due to timeshaving; (3) liquidated damages and (4) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid minimum wages , due to a fixed salary; (2) unpaid overtime wages due to a fixed salary; (3) unpaid wages, including overtime, due to timeshaving; (4) compensation for late payment of wages; (5) statutory penalties; (6) liquidated damages; and (7) attorneys' fees and costs.

3.      Plaintiff further alleges that, pursuant to New York State Human Rights Law N.Y. Exec. Law § 296 ("NYSHRL"), Defendants unlawfully discriminated and retaliated against Plaintiff's (i) disability and (ii) predisposed genetic characteristics, and he is entitled to recover from Defendants: (1) back wages; (2) compensatory and punitive damages; and (3) attorneys' fees and costs.

4.      Plaintiff further alleges that, pursuant to New York City Human Rights Law Administrative Code of City of NY § 8-107 ("NYCHRL"), Defendants unlawfully discriminated and retaliated against Plaintiff, and he is entitled to recover from Defendants: (1) back wages; (2) compensatory and punitive damages; and (3) attorneys' fees and costs.

5.      Plaintiff further alleges that Defendants violated the New York State Earned Safe and Sick Time Act ("ESSTA"), when they retaliatorily terminated Plaintiff's employment due to his medical condition and perceived disability.

6.    Plaintiff further alleges that Defendants violated Plaintiff's rights under the Americans with Disability Act ("ADA") by discriminating against and retaliatorily terminating Plaintiff due to his perceived disability.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.    Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

9.    Plaintiff AHMET TERCUMAN is a resident of Kings County, New York.

10.    Corporate Defendant GAMMA REALTY LLC is a domestic limited liability company organized under the laws of the State of New York, with its principal place of business located at 501 Brightwater Court, Brooklyn, NY 11235, and an address for service of process located at St. George Hotel, 100 Henry Street, Brooklyn, NY 11201.

11.    Corporate Defendant CASOL REALTY LLC is a domestic limited liability company organized under the laws of the State of New York, with its principal place of business located at 3152 Brighton 6th Street, Brooklyn, NY 11235, and an address for service of process located at St. George Hotel, 100 Henry Street, Brooklyn, NY 11201.

12.    Corporate Defendant NEW YORK HEIGHTS LLC is a domestic limited liability company organized under the laws of the State of New York, with its principal place of business located at 315 New York Avenue, Brooklyn, NY 11213, and an address for service of process located at St. George Hotel, 100 Henry Street, Brooklyn, NY 11201.

13.     Corporate Defendant GAMMA BEDFORD LLC is a domestic limited liability company organized under the laws of the State of New York, with its principal place of business located at 1776-1788 Bedford Avenue, Brooklyn, NY 11225, and an address for service of process located at P.O. Box 245036, Brooklyn, NY 11224.

14.     Individual Defendants URI POSNER and DILEK ALBARDAK are the owners and operators of Corporate Defendants. URI POSNER and DILEK ALBARDAK exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class Members. URI POSNER and DILEK ALBARDAK had and exercised the power to (and also delegate to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class Members. At all times, employees could complain to URI POSNER and DILEK ALBARDAK directly regarding any of the terms of their employment, and URI POSNER and DILEK ALBARDAK would have the authority to effect any changes to the quality and terms of employees' employment. URI POSNER and DILEK ALBARDAK directly reprimanded any employee who did not perform his duties correctly. URI POSNER and DILEK ALBARDAK exercised functional control over the business and financial operations of Corporate Defendant. URI POSNER and DILEK ALBARDAK had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

15.     Individual Defendants own and operate the following buildings through Corporate Defendants, *See* **Exhibit A;** (https://whoownswhat.justfix.org/):

    a)  501 Brightwater Ct., Brooklyn, NY 11235 ("Brightwater Building"), through Corporate Defendant GAMMA REALTY LLC;

    b) 3152 Brighton 6th Street, Brooklyn, NY 11235 ("Brighton Building"), through Corporate Defendant CASOL REALTY LLC;

    c) 315 New York Ave, Brooklyn, NY 11213 ("New York Ave Building"), through Corporate Defendant NEW YORK HEIGHTS LLC; and

    d) 1776-1786 and 1788-1798 Bedford Avenue, Brooklyn, NY 11225 ("Bedford Building"), through Corporate Defendant GAMMA BEDFORD LLC;

(each individually a "Building" and together the "Buildings")

16.    Individual Defendants are associated and are joint employers, who act in interest of each other with respect to the employees of Defendants. Defendants have common policies and practices as to wage and hour policies, and share control over Defendants' Buildings' employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

17.    Although Plaintiff did not work at all of the Buildings, and only at the Brightwater Building and Brighton Building, all the Defendants are still appropriately named in this Complaint through the theory of a "single integrated enterprise". Defendants' Buildings share: (i) common ownership, (ii) interrelation of operations, (iii) centralized control of labor relations; and (4) common management.

18.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00 and engaged in interstate commerce. Therefore, at all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the New York Labor Law, and the Regulations thereunder.

19.    Each year, to calculate the yearly property taxes for a rental property, The New York City Department of Finance first calculates the yearly market value of the rental property based on its' yearly income producing potential, which they assess based on the number of units

and the average rents of units in other nearby rental properties. The New York City Department of Finance's Property Information Portal (*see* https://propertyinformationportal.nyc.gov; **Exhibit B**) yields the following information regarding the income producing potential of each of Defendants' Buildings during the relevant period:

| BUILDING | # OF RESIDENTIAL UNITS | 2022 MARKET VALUE | 2023 MARKET VALUE |
|---|---|---|---|
| Bridgewater Building | 95 | $4,832,000 | $4,775,000 |
| Brighton Building | 108 | $9,009,000 | $10,542,000 |
| New York Ave Building | 33 | $1,881,000 | $2,169,000 |
| Bedford Building | 100 | $6,005,000 | $6,532,000 |

20.     Here, for the two years which Plaintiff worked for Defendants, each of Defendants' Buildings had a market value and income producing potential of well over $500,000.00. Although these are estimations, Defendants had the ability to contest these assessments with proof of any Building actually having a lower market value than the Department of Finance's assessment. Since these values have been finalized, these values all either (i) accurately reflected Defendants' gross annual revenues, (ii) were lower than Defendants' actual gross annual revenues, or (iii) were provided directly by Defendants through the contesting process.

21.     At all relevant times, each Corporate Defendant engaged in interstate commerce. Each Corporate Defendant's Building contains appliances, furniture, equipment, and utilities which were imported into New York, purchase by Defendants from vendors located both within and outside of New York State, which are utilized by Defendants' residents. Defendants required Plaintiff and other employees to maintain or fix these imported appliances, equipment, and

utilities. Additionally, Defendants required Plaintiff and other employees to clean and mop their Buildings using cleaning products shipped from outside New York State.

22.

23.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

24.    At all relevant times, Defendants employed at least 40 employees as defined under the NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including but not limited to handymen, porters, and maintenance and repair workers, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

26.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

27.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

28.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including handymen, porters, and maintenance and repair workers employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

29.    The Class members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

30.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

31.    Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay minimum wages, (ii) failing to pay overtime compensation, (iii) failing to timely compensate Plaintiff on a weekly basis, (iv) failing

to provide proper wage statements per requirements of the New York Labor Law, and (v) failing to provide proper wage and hour notices per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

32.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

33.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual

members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

34.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

35.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

  a)  Whether Defendants employed Plaintiff and Class Members within the meaning of NYLL;

  b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

  c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

  d)  Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rate and overtime rate;

e) Whether Defendants paid Plaintiff and Class Members the proper overtime compensation at the premium rate of one and one-half times the regular rate of pay, under NYLL;

f) Whether Defendants paid Plaintiff and Class Members their wages for all hours worked;

g) Whether Defendants paid Plaintiff and Class Members their wages in a timely manner as under NYLL;

h) Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of NYLL; and

i) Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members per requirements of NYLL.

## **STATEMENT OF FACTS**

*Plaintiff's and Putative Class Members' Employment Background*

36.    On or around May 18, 2022, Defendants hired Plaintiff AHMET TERCUMAN  to work as a handyman for two of Defendants' apartment buildings, the Brighton Building at 3152 Brighton 6th Street, Brooklyn, NY and the Brightwater Building at 501 Brightwater Ct., Brooklyn, NY 11235. During his employment, Plaintiff lived in the Brightwater Building. Plaintiff was employed by Defendants until on or around June 2, 2023.

37.    At all relevant times, Defendants regularly scheduled Plaintiff AHMET TERCUMAN to work five days per week, for nine (9) hours per day from 8:00 a.m. to 5:00 p.m., for a total of forty-five (45) hours per week. Additionally, every day, Defendants required Plaintiff to stay past his shift for up to two (2) hours to take out garbage. Additionally, three (3) times per month, Defendants required Plaintiff to work a shift on his day off, also for 9 to 11 hours.

Therefore, Plaintiff regularly worked approximately fifty-five (55) to six-six (66) hours per week. Plaintiff worked without any meal breaks. Defendants required FLSA Collective Plaintiffs and Class Members to work similar amounts of hours every week.

38.    At all relevant times, Defendants compensated Plaintiff bi-weekly at a fixed salary of $1,200.00, or $600.00 per week, regardless of the actual amount of hours Plaintiff worked. There was never any understanding between Plaintiff and Defendants that the fixed salary was intended to cover any overtime hours worked. Defendants similarly paid FLSA Collective Plaintiffs and Class Members on an improper fixed salary basis and failed to compensate them their overtime premium of time and one half for all hours worked over forty.

*Plaintiff's Class-Wide Fixed Salary Claims*

39.    At all relevant times, Defendants improperly compensated Plaintiff below the prevailing New York State minimum wage of $15.00 per hour, in violation of the NYLL. Because Plaintiff worked between 55 to 66 hours per week, Defendants' fixed salary of $600.00 per week for all hours worked equates to $10.91 per hour for 55 hours and $9.09 per hour for 66 hours. Defendants similarly paid Class Members below the New York State minimum wage rate, in violation of the NYLL.

40.    Throughout his employment, Defendants improperly compensated Plaintiff's overtime hours below the prevailing New York State minimum overtime wage of $22.50 per hour, and the prevailing Federal minimum overtime wage of $10.87 per hour, in violation of the FLSA and the NYLL. As set forth above, Defendants compensated Plaintiff's overtime hours at rates of between $9.09 per hour to $10.91 per hour. At all relevant times, Defendants' failure to compensate Plaintiff with proper overtime rates violated the NYLL, and for the weeks where Plaintiff's hours worked resulted in being compensated below $10.87 per hour, it violated the

FLSA. Defendants similarly paid FLSA Collective Plaintiffs and Class Members below the New York State and Federal minimum overtime wage rates, in violation of the FLSA and NYLL.

41.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff and Class Members the proper overtime rates for all their hours worked over forty (40) per week, in violation of the FLSA and the NYLL. Defendants awareness and willfulness is obvious based on the fact that Defendants (i) scheduled and required Plaintiff and Class Members to work over forty (40) hours per week, and (ii) set Plaintiff's and Class Members pay to fixed-rate salaries that compensated their overtime hours at the same rate as their regular hours.

42.    At all relevant times, Defendants' knowingly and willfully operated their business with a policy of failing to pay Plaintiff and Class Members at the prevailing New York State minimum wage, in violation of the NYLL. Defendants' awareness and willfulness is obvious based on the fact that Defendants set Plaintiff's and Class Members weekly schedules and fixed salaries to amounts that would never result in Plaintiff and Class Members achieving the minimum wage.

*Plaintiff's Class-Wide Late Payment of Wages Claims*

43.    At all relevant times, Defendants compensated Plaintiff and Class Members on a bi-weekly basis and therefore always failed to compensate Plaintiff and Class Members their wages on a weekly basis, in violation of the NYLL. Under NYLL § 191, Plaintiff and Class Members (i) were manual workers and (ii) had to be compensated once every week. Plaintiff's duties included painting, electrical repairs, taking out garbage, and plumbing, amongst other various manual labor. Class Members were assigned similar manual labor.

44.    In addition to Defendants paying Plaintiff and Class Members at an improper bi-weekly frequency, Defendants routinely further delayed compensating Plaintiff and Class

Members by another four (4) to fifteen (15) days. As a result, along with Defendants' 7-day delay from their improper bi-weekly compensation policy, Defendants compensated Plaintiff and Class Members eleven (11) to twenty-two (22) days later than required by the NYLL. By failing to pay Plaintiff and Class Members their wages within seven (7) days during the week in which they were earned, Defendants violated NYLL § 191(1)(a)(1).[1]

45.      Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their proper wages on a weekly basis, in violation of the NYLL. Defendants' awareness and willfulness is obvious based on the fact that Defendants (i) assigned positions of manual labor to Plaintiff and Class Members, and (ii) set their pay frequency to a bi-weekly basis.

*Plaintiff's Class-Wide WTPA Violations Claims*

46.      At all relevant times, Defendants never provided Plaintiff and Class Members with wage notices accurately stating their base rates of hourly pay. Defendants also never provided Plaintiff and Class Members with proper wage statements accurately stating their base rates of hourly pay, overtime rates, or hours worked.

47.      In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendant knowingly and willfully operated their business with a policy of not providing accurate wage notices, stating employees' true base rate of hourly pay, to Plaintiff and Class Members at the beginning of their employment with Defendant.

48.      Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual

---

[1] See *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp*., 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp*., 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

49.      In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As many Courts have observed, when paired with allegations of underpayments, the harm generated from the failure to provide such accurate notices and statements, is obvious on its face:

> Denying an employee such notices—as alleged here—can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay. The Court thus finds that, by alleging that they were not furnished the statutorily required notices, plaintiffs have asserted a concrete and particularized injury sufficient to confer standing for their WTPA wage notice and wage statement claims. Consistent with this, multiple courts in this District have exercised jurisdiction over such claims, without requiring a specific showing as to the downstream impact on the plaintiff of the non-provision of the required notice.

*Bueno v. Buzinover*, 2023 U.S. Dist. LEXIS 38154, *5-6 (S.D.N.Y. 2023) (Judge Paul A. Engelmayer) (collecting cases)

> The wage statement and notice violations alleged here are of a different class of harm than those alleged in *TransUnion* and *Maddox*. The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL." *Bueno*, 2023 U.S. Dist. LEXIS 38154, 2023 WL 2387113, at *3 (quoting *Imbarrato v. Banta Mgmt. Servs. Inc.*, No. 18 CV 5422, 2020 U.S. Dist. LEXIS 49740, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)). Specifically,

the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wage they are owed. *Bueno*, 2023 U.S. Dist. LEXIS 38154, 2023 WL 2387113, at *3.

Here, although the plaintiffs' wage statement and notice claims allege only the bare assertion that they never received their statutorily required wage statements and notices, the realization of the downstream harm the statute seeks to prevent—wage theft—is evident on the face of the pleadings. Had the sole allegation been one of failure to furnish statutorily mandated notices and statements absent the companion allegations of wage theft, plaintiffs may have encountered an issue of standing. But that is not the case here. The plaintiffs in this case allege a years-long practice of failing to pay proper wages, a pattern that was undoubtedly buttressed by their employer's failure to comply with the wage statement and notice provisions of the WTPA, which were designed to prevent this precise form of wage theft by informing employees of their pay rates and deductions.

*Bello v. Pro-Line Pumping Corp.*, 2023 U.S. Dist. LEXIS 106676, *27-29 (E.D.N.Y. 2023) (Judge Robert Levy); *report and recommendation adopted, Bello v. Pro-Line Pumping Corp.*, 2023 U.S. Dist. LEXIS 125632 (E.D.N.Y. 2023) (Judge Rachel P. Kovner).

50.     Other Courts have found standing exists where a plaintiff alleges that the failure to provide proper wage notices and statements resulted in one of the following: (i) delayed payment of all proper wages, (ii) deprived employees of the ability to immediately contest wage calculations, (iii) misled and/or confused employees as to their hours worked or rates of pay, and/or (iv) the inaccurate or absent wage notice and wage statements prevented employees from realizing the extent of their underpayments. *See e.g., Lipstein v. 20X Hospitality LLC*, 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023) (Judge Jennifer L. Rochon) (finding standing where plaintiff alleged that the lack of wage notices and wage statements kept him from realizing that he was being underpaid and thereby preventing him from taking appropriate action to obtain the payments due to him); *Metcalf v. TransPerfect Translations International, Inc.*, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023) (Judge Edgardo Ramos) (finding standing where plaintiffs alleged that inaccurate wage notices and wage statements prevented them from knowing whether, and to what extent, they had been underpaid).

51.     Here, as in the cases described above, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay including overtime hours and overtime rates due to the wage violations described above, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, necessitated the current litigation to vindicate Plaintiff's and Class Members' rights, and delayed Plaintiff's and Class Members' retention of complete compensation. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

52.     Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the correct base rate of pay and total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours employees actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employees' wages did *not* correspond to the hours the employees actually worked. Either possibility would have allowed Plaintiff and Class Members to immediately vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury as does the delay in receiving payment caused by them.

53.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

54.    Further, the failure to accurately record hours of work on earnings statements, which Defendants is mandated by law to undertake on behalf of Plaintiff and Class Members, dissuaded reasonable workers, including Plaintiff, from raising complaints and advocating for their rights.  Defendants created these false documents with under-recorded work hours for exactly the purpose of dissuading and inhibiting employees from exercising their rights under the NYLL and the FLSA to demand their back-pay.

55.    Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants was able to hide its wrongdoing from employees, dissuaded reasonable workers from bringing claims ending Defendants' underpayment of wages sooner, and Defendants continues to attempt to hide its wrongdoing necessitating the current litigation.  The failure to provide NYLL notices delayed Plaintiff's and Class Members' realization of underpayments and their extent, which in turn delayed the bringing of the current litigation, and delayed payment of all proper wages owed to Plaintiff and the Class Members.

56.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements, as required by the NYLL.

57.    The direct effect of understating the number of hours an employee worked is to reduce the wages that the employee is listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee's earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846,

846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

58.     The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

59.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar.

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

60.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury from both the delay in recouping payment, and in lost benefits. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

61.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

62.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and Class Members, rather than merely misreporting their incomes. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiffs and Class Members lost benefits by virtue of how Defendants reported their incomes, and how Defendants reported employees' incomes was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

63.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

64.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

65.    Here, the problem is not merely challenging but insurmountable. Plaintiffs and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiffs and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs were irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2's to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

66.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class members, in violation of the NYLL.

67.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class members, in violation of the NYLL.

*Plaintiff's Individual Discrimination and Retaliation Claims*

68.    On or around June 2, 2023, Plaintiff suffered from a seizure while at work, and was taken to the hospital in an ambulance.

69.    After his treatment and discharge from the facility, Plaintiff returned to work after a few hours and found that he had been terminated. Defendants did not provide Plaintiff with any reasoning or explanation for his termination.

70.    Throughout Plaintiff's employment, Defendants had no complaints with Plaintiff with respect to his work and never expressed any dissatisfaction to Plaintiff.

71.    Following Defendants' retaliatory termination, Defendants then further retaliated against Plaintiff and evicted Plaintiff.

72.     Defendants discriminated and retaliated against Plaintiff due to his disability in violation of the NYCHRL, NYSHRL, ADA, and ESSTA. Further, because Plaintiff was genetically predisposed to develop this disability, Defendants discriminated and retaliated against Plaintiff due to his predisposed genetic characteristics in further violation of the NYSHRL.

73.     It is clear that Defendants discriminated against and terminated Plaintiff solely because of his medical condition, perceived disability, and predisposing genetic characteristics, and not due to his performance at work. This is clear based on the fact that Defendants decided to terminate Plaintiff before he even returned from his hospital trip that lasted only a few hours, and did not even wait to see if Plaintiff's performance would be negatively affected by his condition in any way. Any other reason for Plaintiff's termination which Defendants may provide is clearly pretextual.

74.     Defendants' discriminatory and retaliatory conduct directly upended Plaintiff's life and the effects of this conduct are worsened by the 13 months of wage and hour violations that lead up to it. The fact that Defendants (i) continuously pushed Plaintiff to work more hours than scheduled, (ii) severely underpaid Plaintiff for all the work he performed for over a year, and then (iii) terminated and evicted Plaintiff immediately after he suffered from a medical incident which has caused Plaintiff to take on numerous medical bills and health complications, shows a complete disregard for Plaintiff, his rights, and his dedication to his employment with Defendants despite every violation they subjected Plaintiff to.

75.     Defendants, through their discriminatory and retaliatory conduct, directly caused egregious emotional distress to Plaintiff.

76.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

77.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

78.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

79.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

80.    At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of one and one-half times the regular rate of pay to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

81.    At all relevant times, Defendants had a policy and practice of failing to pay wages for all hours worked.

82.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs the proper overtime premium of one and one-half times the regular rate of pay for their hours worked

in excess of forty (40) hours per week when Defendants knew or should have known such was due.

83.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

84.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

85.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation and unpaid wages, plus an equal amount as liquidated damages.

86.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

87.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

88.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

89.    At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

90.     At all relevant times, Defendants failed to compensate Plaintiff and Class Members their proper wages at the prevailing minimum wage rate.

91.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their proper overtime compensation at rates of not less than one and one-half times their regular rates of pay for each hour worked in excess of forty (40) hours in a workweek.

92.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them any spread of hours premiums for all their shifts worked in excess of ten (10) hours.

93.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them weekly wages, as required by the NYLL § 191(a)(1).

94.     Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiffs and Class Members, as required by the NYLL § 195(1).

95.     Defendants knowingly and willfully failed to provide proper wage statements to Plaintiffs and Class Members with every wage payment, as required by the NYLL § 195(3).

96.     Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime compensation, unpaid minimum wages, spread of hour premiums, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

## **COUNT III**

## **VIOLATION UNDER THE AMERICANS WITH DISABILITIES ACT**

97.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

98.    The ADA prohibits discrimination against a qualified individual on the basis of disability in the terms, conditions, and privileges of an employment. 42 U.S.C. § 12112(a).

99.    Defendants denied Plaintiff an equal opportunity due to his perceived disability, when there was no evidence that Plaintiff's medical condition negatively impacted his performance at work.

100.    At all relevant times, Defendants controlled their organization and employees, and exercised the power to hire, fire, manage, and reprimand their employees.

101.    Defendants caused Plaintiff loss of employment due to his perceived disability and are liable under the ADA for discrimination on the basis of Plaintiff's medical condition.

<u>COUNT IV</u>

<u>VIOLATIONS OF THE<br>NEW YORK STATE HUMAN RIGHTS LAW</u>

**(New York State Executive Law § 296 *et seq*.)**

102.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

103.    The New York State Human Rights Law, New York State Executive Law § 296(1)(a) provides:

> "It shall be an unlawful discriminatory practice: For an employer … because of an individual's [...] disability, [...] to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

104.    Plaintiff was an employee and a qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL. Plaintiff was discriminated and retaliated against by Defendants because he was perceived to have a disability.

105.    Defendants operated a business that discriminated and retaliated against Plaintiff, in violation of the NYSHRL because they unlawfully terminated Plaintiff's employment (i) in perception that his medical condition left him disabled and (ii) due to his predisposing genetic characteristics.

106.    As a result of Defendants' unlawful discriminatory and retaliatory practices, Plaintiff sustained injury including economic damages, past and future egregious physical and emotional distress.

107.    Due to Defendants' violations under the NYSHRL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory and punitive damages; and (3) attorney's fees and cost.

### COUNT IV

### VIOLATIONS OF THE
### NEW YORK CITY HUMAN RIGHTS LAW

108.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

109.    The New York City Human Rights Law, The New York City Administrative Code § 8-107(1), provides:

> "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

110.    At all relevant times, Defendants had at least four persons in their employ. Plaintiff was an employee and qualified person within the meaning of NYCHRL and Defendants are covered employers under NYCHRL.

111.    Under NYCHRL, an employer is liable for the discriminatory conduct by an employee, agent or independent contractor.

112.    Defendants operated a business that discriminated against Plaintiff in violation of the NYCHRL because they terminated Plaintiff's employment based on his perceived disability after having a seizure while at work.

113.    Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's protected rights under NYCHRL.

114.    As a direct and proximate result of Defendants' unlawful acts in violation of NYCHRL, Plaintiff has suffered economic harm as well as severe mental anguish and egregious emotional distress for which he is entitled to an award of monetary damages and relief, including punitive damages and attorneys' fees.

## COUNT IV

### INTERFERENCE AND RETALIATION UNDER THE EARNED SICK AND SAFE TIME ACT

115.    Defendants knowingly and willfully failed to provide Plaintiff with proper sick leave as required under the Earned Sick and Safe Time Act ("ESSTA").

116.    Defendants are employers covered by ESSTA's sick leave provision as an "employers with between five and ninety-nine employees in any calendar year, each employee shall be provided with up to forty hours of paid sick leave in each calendar year." NY Lab. Law § 196-B(1)(b).

117.    NYLL makes it unlawful for an "employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner, discriminate, or retaliate against any employee because such employee has exercised his or her rights afforded under this section,

including, but not limited to, requesting sick leave and using sick leave, consistent with the provisions of section two hundred fifteen of this chapter." New York Lab. Law § 196-B(7)

118.    Plaintiff is a covered employee by definition of ESSTA.

119.    Defendants knew Plaintiff would need time off to recover from his sickness, or to schedule follow up appointments with his doctors, and Defendants did not want Plaintiff to take time off from work.

120.    Defendants preferred to terminate Plaintiff's employment than to let him take time off, and violated Plaintiff's rights under ESSTA.

121.    Plaintiff has suffered economic loss as an immediate and proximate result of Defendants' violation, and is entitled to compensatory damages under ESSTA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, the NYCHRL, the ADA, and the ESSTA;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid minimum wages due under the NYLL;

d.    An award of unpaid overtime compensation due under the FLSA and the NYLL;

e.    An award of unpaid spread of hours premiums due under the NYLL;

f.     An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

g.     An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the FLSA;

h.     An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

i.     An award of liquidated and/or punitive damages as a result of Defendants' violation under the ESSTA;

j.     An award of compensatory damages for Plaintiff's egregious emotional suffering as a result of Defendants' unlawful discriminatory and retaliatory practices, pursuant to NYSHRL, NYCHRL, and ESSTA;

k.     An award of punitive damages for Defendants' unlawful discriminatory practices, pursuant to NYSHRL, NYCHRL; and ADA;

l.     An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

m.     Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n.     Designation of this action as a class action pursuant to F.R.C.P. 23;

o.     Designation of Plaintiff as Representative of the Class; and

p.     Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 9, 2024

Respectfully submitted,

By:       */s/ C.K. Lee*
                C.K. Lee, Esq. (CL 4086)

**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, Eighth Floor
New York, New York 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*